1
2
3
4
5
6
7

THE HONORABLE RICARDO S. MARTINEZ

8          UNITED STATES DISTRICT COURT

9         WESTERN DISTRICT OF WASHINGTON

10                  AT SEATTLE

11

| | |
|---|---|
| GAIL FIALKOV, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>MICROSOFT CORPORATION, et al.,<br><br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 2:13-cv-02039-RSM

<u>CLASS ACTION</u>

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

<u>DEMAND FOR JURY TRIAL</u>

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1    Lead Plaintiffs, the Seafarers Pension Plan, the Seafarers Officers and Employees Pension
2    Plan, the United Industrial Workers Pension Plan, the MCS Supplementary Pension Plan and the
3    Oklahoma Firefighters Pension and Retirement System ("Lead Plaintiffs"), on behalf of themselves
4    and all other persons similarly situated, allege the following based upon personal knowledge as to
5    themselves and their own acts, and information and belief as to all other matters, based upon, *inter*
6    *alia*, the investigation conducted by and through their attorneys.

### NATURE OF THE ACTION

8    1.    This is a federal securities class action brought against Microsoft Corporation
9    ("Microsoft" or the "Company") and three of its senior officers for violations of the Securities
10   Exchange Act of 1934 (the "1934 Act").   This action is brought on behalf of all purchasers of
11   Microsoft common stock during the period from January 24, 2013 through July 18, 2013 (the "Class
12   Period"), who were damaged as a result of defendants' violations of the federal securities laws.  This
13   action seeks to pursue remedies for violations of the anti-fraud provisions of the federal securities
14   laws.

15   2.    Defendants are Microsoft, the Company's outgoing CEO Steven A. Ballmer
16   ("Ballmer"), former CFO Peter S. Klein ("Klein") and the former CFO of the Window's Division
17   Tami Reller ("Reller") (collectively, "defendants").

18   3.    This action concerns defendants' misleading statements and material omissions
19   regarding Microsoft's inventory of Surface RT tablets.  Throughout the Class Period, while
20   positively talking about Surface RT demand and sales, and the "healthy range" of Microsoft's
21   inventory, defendants failed to disclose that the Company's inventory actually contained in excess of
22   five million units of unsold and returned Surface RT tablets and related components.  It was only on
23   July 18, 2013 that investors learned the truth when defendants were forced to disclose that Microsoft
24   would take a $900 million charge to account for unsold Surface RT inventory.  Analysts and
25   investors were shocked by the disclosure, and, within one day, Microsoft's common stock price had
26   plunged over 11%.  Institutional and individual investors, including Lead Plaintiffs, were damaged

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                          - 1 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1   by defendants' fraudulent conduct, as the disclosure of the truth about Microsoft's Surface RT

2   inventory wiped out more than $30 billion of the Company's market capitalization.

### JURISDICTION AND VENUE

4.       The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t-1, and the rules and regulations promulgated thereunder by the SEC, including SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

5.       Jurisdiction is conferred by §27 of the 1934 Act and 28 U.S.C. §1331.

6.       Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391. Microsoft and the individual defendants conduct business in this District and the Company maintains its headquarters in Redmond, Washington.

7.       In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### THE PARTIES

**Lead Plaintiffs**

8.       By Court Order dated January 6, 2014 (Dkt. No. 50), the Seafarers Pension Plan, the Seafarers Officers and Employees Pension Plan, the United Industrial Workers Pension Plan, the MCS Supplementary Pension Plan and the Oklahoma Firefighters Pension and Retirement System were appointed Lead Plaintiffs in this action.

9.       The Seafarers Pension Plan, the Seafarers Officers and Employees Pension Plan, the United Industrial Workers Pension Plan and the MCS Supplementary Pension Plan are multiemployer benefits plans based in Camp Springs, Maryland.  Combined, the pension plans are responsible for administering the pension and retirement benefits of more than 24,000 current and former United States merchant mariners, individuals employed in associated industrial trades and officers and employees throughout the country who support the merchant mariners and tradesmen. The pension plans have invested assets of $1.49 billion.

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                          - 2 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1       10.    The Oklahoma Firefighters Pension and Retirement System is a public pension plan based in Oklahoma City, Oklahoma. The plan is responsible for administering retirement benefits for more than 23,700 active and retired Oklahoma firefighters and has invested assets of $2.1 billion.

11.    As set forth in the Seafarers Pension Plan, the Seafarers Officers and Employees Pension Plan, the United Industrial Workers Pension Plan, the MCS Supplementary Pension Plan and the Oklahoma Firefighters Pension and Retirement System's certifications filed in connection with their motion for appointment as lead plaintiff (Dkt. No. 23), the Lead Plaintiffs purchased Microsoft common stock at artificially inflated prices during the Class Period and, as a result of defendants' conduct detailed herein, suffered damages in connection with those purchases.

**Defendants**

12.    **Microsoft Corporation**: Founded in 1975, Microsoft is a software, service and solutions provider headquartered in Redmond, Washington. During fiscal year 2013, the Company was comprised of five business segments, including the Windows Division. The Windows Division was responsible for the development, marketing and sales of PC operating systems and related services and hardware. While the Company had long focused on its software products, in a 2012 letter to shareholders, defendant Ballmer announced a "'significant shift,'" repositioning Microsoft as a "devices and services company." Highlighting this shift was the announcement, in June 2012, that Microsoft would develop, manufacture and sell its own tablet computers, named Surface. During the Class Period, the Surface tablet business operated within the Windows Division.

13.    At all relevant times, Microsoft's common stock was listed and traded under the symbol "MSFT" on the NASDAQ Stock Market, an efficient market. Microsoft, through its management, representatives and agents, made, and is liable for, the misstatements and omissions set forth herein at ¶¶39-43, 49, 54-55, 61, 64.

14.    **Steven A. Ballmer**: Ballmer was appointed CEO of Microsoft in 2000 and remained in that position, and as a corporate director, during the Class Period. Having previously served as the Company's senior vice president of sales and support, senior vice president of systems software

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

- 3 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

and vice president of marketing, Microsoft's 2013 Proxy Statement stated that Ballmer has "deep knowledge of the Company's history, strategies, technologies, and culture" and "has been the driving force behind [Microsoft's] strategies and operational excellence."  The Proxy Statement further assured investors that "[h]is leadership of diverse business units and functions before becoming Chief Executive Officer gives Mr. Ballmer powerful insight into the product development, marketing, finance, and operations aspects of the Company."[1]

15.     In 2012, as Microsoft's earnings and stock price fell further behind Apple and other rivals, Ballmer was the driving force and public proponent of the shift to a "devices and services" company.  As one reporter later described it, "'Ballmer has definitely placed his stamp on Microsoft, meaning the "Gates era" has come to an end'" and "'[h]e is fundamentally shifting the company from an operating system company to services and devices company.'"[2]  As set forth herein, central to that shift and the efforts to revive Microsoft's flagging stock price, was the development and sale of tablet devices.  In July 2010, Ballmer described the production of a Windows-based tablet as "job one urgency" at Microsoft, and when the first tablet, the Surface RT, was unveiled on June 18, 2012, Ballmer was the key presenter.  Following the June 2012 unveiling, Ballmer continued with a public relations blitz, touting the Surface tablets and their role in transforming Microsoft into a devices and services company.

16.     Within weeks of the Surface RT and its Windows 8 operating system coming to market in October 2012, and amid public rumors that sales of the device were below expectations, Ballmer continued his transformation of the Company.  Steven Sinofsky ("Sinofsky"), a 23 year Microsoft veteran and the head of the Windows Division, was forced to resign.  In Sinofsky's place, Ballmer promoted defendant Reller to CFO and Chief Marketing Officer of the Windows Division, and Julie Larson-Green to head of software and hardware engineering.  According to Microsoft's

---

[1]   Microsoft's 2013 Proxy Statement identified Ballmer's primary "experience, expertise or attribute" as, among other matters, "technology, devices and services," "sales and marketing" and "financial" matters.

[2]   Chris O'Brien, *Steering Away From Windows; Steve Ballmer says the company is about 'devices and services,'* L.A. Times, July 12, 2013.

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                         - 4 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1  November 12, 2012 press release, "[b]oth executives will report directly to Microsoft CEO Steve

2  Ballmer."

3       17.    In addition to directing that the senior executives in the Windows Division report

4  directly to him, Ballmer had responsibility for assuring that Microsoft's public financial filings were

5  accurate and complete.  During fiscal year 2013, and in conjunction with each of Microsoft's public

6  financial statements filed with the SEC, Ballmer signed a certification pursuant to §302 of the

7  Sarbanes-Oxley Act, attesting that he reviewed the contents of the filing to confirm the "report does

8  not contain any untrue statement of a material fact or omit to state a material fact necessary to make

9  the statements made, in light of the circumstances under which such statements were made, not

10  misleading."  To assure that the certification was not simply a hollow gesture, Ballmer further

11  confirmed that he, along with then Microsoft CFO and defendant Klein, was responsible for

12  establishing and maintaining Microsoft's disclosure controls and procedures, had designed such

13  controls to assure that material information relating to Microsoft's business was promptly made

14  known to Ballmer and the Company's senior executives and had routinely evaluated the

15  effectiveness of the Company's policies with regard to assuring that he and other executives were

16  made aware of material information.  At no time before, during or after the Class Period did Ballmer

17  or any other defendant assert that they were not aware of material aspects regarding the production,

18  distribution, sales or inventory of the Surface RT tablets.

19       18.    Following the end of the Class Period and the revelation that Microsoft would have to

20  take a $900 million charge for unsold inventory of Surface RT tablets, Ballmer announced that he

21  would be retiring as CEO of the Company.  Ballmer acknowledged that the retirement was earlier

22  than he expected and analysts speculated that the $900 million Surface RT inventory charge was "the

23  final straw for Microsoft's senior figures, who demanded Steve Ballmer take the fall for the project's

24  failure."[3]  Reinforcing the perception that Ballmer was being forced out of the Company as a result

25

26    [3]    Daniel Cooper, *Microsoft's Surface 2: New tablet, same problems*, Engadget, Sept. 23, 2013 (citing Gregg Keizer, *Ballmer Forced Out After $900M Surface RT Debacle*, Computerworld, Aug. 23, 2013).

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

- 5 -

of his role in the Surface RT disaster, Microsoft's October 2013 Proxy Statement disclosed that the Company's Board of Directors cut Ballmer's fiscal year 2013 bonus due to the decline in Windows Division income and the $900 million Surface RT inventory charge.

19.     Ballmer made or had authority over the content, and how to communicate it, of the misstatements and omissions set forth herein at ¶¶43 and 55 and is liable for those misstatements and omissions.  Ballmer is also liable as a control person of Microsoft within the meaning of §20(a) of the 1934 Act for the misstatements and omissions set forth herein at ¶¶39-43, 49, 54-55, 61 and 64.

20.     **Peter S. Klein**: Klein started at Microsoft in 2002 as the CFO of the Company's Server and Tools Business.  In 2005, Ballmer promoted him to CFO of Microsoft's Business Division, overseeing all financial strategy, management and reporting for the division.  Klein was again promoted by Ballmer and, in 2009, became Microsoft's corporate CFO.  According to Ballmer at the time of Klein's promotion, "'Peter brings great finance and operations expertise and a deep understanding of the company.'"[4]  As CFO, Klein had responsibility for leading Microsoft's finance operations.  In particular, according to Microsoft's 2012 Proxy Statement, which was issued two weeks before the release of the Surface RT and Windows 8, Klein was responsible for "driv[ing] the Company's focus on managing operating expenses even as we invested to reach the threshold of one of the most important set of product launches in the Company's history."

21.     In addition to focusing on Microsoft's expenses and financial results, Klein had responsibility for assuring that Microsoft's public financial filings were accurate and complete.  During fiscal year 2013, and in conjunction with each of Microsoft's public financial statements filed with the SEC, Klein signed a certification pursuant to §302 of the Sarbanes-Oxley Act, attesting that he reviewed the contents of the filing to confirm the "report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading."  To assure that the certification was not simply a hollow gesture, Klein further confirmed that he, along with

---

[4]     Nov. 24, 2009 Microsoft Press Release: Microsoft Announces Chief Financial Officer Transition.

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                    - 6 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1   Microsoft CEO and defendant Ballmer, was responsible for establishing and maintaining Microsoft's

2   disclosure controls and procedures, had designed such controls to assure that material information

3   relating to Microsoft's business was promptly made known to Klein and the Company's senior

4   executives and had routinely evaluated the effectiveness of the Company's policies with regard to

5   assuring that he and other executives were made aware of material information.  At no time before,

6   during or after the Class Period did Klein or any other defendant assert that they were not aware of

7   material aspects regarding the distribution, sales or inventory of the Surface RT tablets.

8          22.     On April 18, 2013 Klein announced that he was resigning from Microsoft and would

9   be replaced as of June 30, 2013, before Microsoft's fiscal year 2013 results were announced.

10  Microsoft reported that Klein would receive $2 million in 2014 in exchange for confidentiality and

11  non-compete agreements.  According to Klein, he resigned because "it's a good time to re-focus my

12  priorities and spend time with family in a way I haven't previously had the chance."  Within six

13  months of leaving Microsoft, however, Klein accepted a job as CFO of the billion-dollar talent

14  agency William Morris Endeavor in Los Angeles, California.

15         23.     Klein made or had authority over the content, and how to communicate it, of the

16  misstatements and omissions set forth herein at ¶¶39-43, 49 and 54-55 and is liable for those

17  misstatements and omissions.  Klein is also liable as a control person of Microsoft within the

18  meaning of §20(a) of the 1934 Act for the misstatements and omissions set forth herein at ¶¶39-43.

19  49, 54-55, 61 and 64.

20         24.     **Tami Reller**: Reller joined Microsoft in 2001 as part of the acquisition of Great

21  Plains Software, where she had been CFO.  Reller held several positions in Microsoft before being

22  promoted to CFO and Chief Marketing Officer of the Windows Division in the wake of Sinofsky's

23  termination in November 2012.  According to the November 12, 2012 Microsoft press release

24  announcing her promotion, Reller would "report directly to Microsoft CEO Steve Ballmer" and

25  "assume the lead in driving business and marketing strategy for Windows devices, including Surface

26  and partner devices, in addition to her current marketing and finance responsibilities."  As reflected

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                - 7 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

herein, Reller also assumed responsibility for publicly promoting and discussing the Surface tablets and Windows 8 during the Class Period.

25.     Reller made or had authority over the content, and how to communicate it, of the misstatements and omissions set forth herein at ¶61 and is liable for those misstatements and omissions. Reller is also liable as a control person of Microsoft within the meaning of §20(a) of the 1934 Act for the misstatements and omissions set forth herein at ¶¶39-43, 49, 54-55, 61 and 64.

## FACTUAL BACKGROUND

**The Tablet Market and Microsoft**

26.     Apple released the first iPad on April 3, 2010. The iPad was an almost immediate success, and increasing sales of the tablet caused and coincided with a marked decrease in sales of x86 PCs.[5] Microsoft was facing declining demand for the Company's driving force – the Windows operating systems – while its long-time rival was attracting new customers and taking control of the tablet market. As analysts increasingly began to note, "shares of MSFT are driven by the growth prospects of its Windows franchise and its ability to stay relevant in the post-PC era"[6] and "'[t]he reason why the stock hasn't performed well is the expectation that PC sales will slow, and investors are not comfortable with Microsoft's strategy for the post-PC environment.'"[7]

27.     Thus, it was no surprise that little more than three months after the release of the iPad, Ballmer told a national audience of analysts that tablets are Microsoft's "***job one urgency***." During the July 29, 2010 conference, Ballmer assured analysts and investors that "[n]obody's sleeping at the switch" and "Microsoft engineers are losing sleep over the project." Having famously rejected Microsoft's earlier efforts to develop a tablet, Ballmer promised that "it ain't a long time from now" until the Company releases new devices and commented that the vast majority of tablets would be

---

[5]     The term x86 refers to a series of chip models that together comprise the predominant personal computer CPU architecture and platform and powered the primary personal computers that were sold with and/or used Microsoft's Windows operating systems.

[6]     Yun Kim and Alice Hur, *MSFT in the News – March 25th-April 1st*, Janney Capital Markets, Apr. 2, 2013.

[7]     David Goldman, *Why Does Everyone Hate Microsoft?*, CNN Money, Aug. 11, 2010.

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                                    - 8 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1  running on Windows-compatible Intel chips, rather than the ARM chips that were predominantly

2  being used in smartphones.[8]

3      28.    Over the next year, however, Microsoft failed to deliver a tablet.  While 80 new

4  tablets were introduced to the market at the January 2011 Consumer Electronics Show, and Apple

5  was selling up to 11 million iPads a quarter, Microsoft's engineers were still, apparently, losing sleep

6  over the project.  As iPad and, increasingly, Android tablet sales skyrocketed, the x86 PC and

7  Windows market continued to weaken.  Analysts following Microsoft reported, "[t]he tablet threat to

8  the consumer PC market isn't some long-term abstract thing that might or might not happen over the

9  next three years.  It's happening right now."[9]  Indeed, by the start of 2012, Apple's revenue from the

10  iPad alone was exceeding Microsoft's total sales of Windows.

11  **Windows 8 and the Surface Tablets**

12      29.    Finally, on June 18, 2012, Microsoft staged an elaborate event in Los Angeles for a

13  "'major announcement.'"  Defendant Ballmer stood before an audience of reporters, analysts and

14  investors and unveiled that Microsoft would manufacture and sell its own tablets, the Surface RT

15  and Surface Pro.  According to Ballmer, "'[w]e took the time to get . . . Surface right.'"  Ballmer

16  later wrote in a letter to shareholders, Microsoft was undergoing a "significant shift," and he was

17  repositioning it as a "devices and services company."  As *The New York Times* reported, "[i]t is the

18  first time in the company's 37-year history that it will offer a computer of its own creation.  The

19  device is aimed squarely at Apple's blockbuster iPad, which has begun to threaten Microsoft's

20  hegemony in the computer business."[10]  In a June 18, 2012 article in the *Globe and Mail*, technology

21  reporter Omar El Akkad also commented: "If it succeeds, ***the Surface could prove to be the most***

---

8   ARM chips are based on a reduced instruction set computing (RISC) architecture and sacrifice computing power for reduced cost, heat and power use.

9   Matt Rosoff, *Consumer PC Sales Already Getting Hammered As Apple's iPad Takes the World by Storm*, Business Insider, Feb. 22, 2011.

10   Nick Wingfield, *Microsoft Is Expected to Introduce a Tablet*, N.Y. Times, June 16, 2012.

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                    - 9 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1    *important piece of hardware Microsoft has ever built*, giving the company a means to cash in on the

2    tablet market as consumers increasingly choose mobile devices over desktop computers."

3        30.    Following the June 18, 2012 announcement, analysts also noted that it was important

4    for Microsoft to "hit the market running" with the tablets.  Apple and Google already had a

5    substantial head start and Microsoft needed to get a device into the market before the critical holiday

6    selling season ("Black Friday" through Christmas).  Gartner Inc. analyst Michael Gartenberg told

7    Bloomberg: "'*If they miss the September-October time frame, they're going to be stuck without*

8    *being able to ship anything in 2012*.  The last thing Microsoft wants to have is a situation where

9 (10)    there are no compelling Windows tablets at a time when the new iPad looks like it's going to be a

11    good seller for the holidays.'"  A Barclays Capital Inc. report issued September 6, 2012, as the

12    Surface tablets were about to be launched, summed up market sentiment:  "*The next few months are*

13    *crucial for the future of Microsoft's Windows division* (25% of company revenue and 42% of

14    operating profit)."

15        31.    Despite Ballmer's 2010 statement dismissing ARM chip-based tablets and the

16    substantial lead already ceded to competitors, the only tablet that Microsoft could get to the market

17    by the 2012 holiday selling season was the Surface RT.  Whereas the Surface Pro used an Intel

18    chipset and would run the full Windows 8 operating system, with all the application and software

19    capabilities as a Windows 8 desktop, the Surface RT was powered by an ARM chipset and could

20    only run a scaled down version of Windows 8.  Nevertheless, on October 26, 2012, the Surface RT

21    was released to the market.  The Surface Pro would not be ready to sell until February 9, 2013.

22        32.    When it was released, the Surface RT was only available for purchase from

23    Microsoft's website or one of the Company's own retail stores.  Based on meetings with Microsoft

24    management, analysts commented that this limited distribution was "suggestive of Microsoft's

25

26

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)
                                            - 10 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

modest ambitions with Surface [RT],"[11] and, in a statement that was seen as an effort to lower expectations, Ballmer commented at the July 2012 World Partner Conference that "'[w]e may sell a few million'" Surface RT tablets.

**The Surface RT Suffers from "Modest" Sales**

33.     Even before its release, and particularly after Microsoft disclosed that the limited-capability Surface RT would sell for $499-$699, some public commentators were forecasting poor sales for the tablet.  Cowen & Co. reported in an October 16, 2012 publication, "[n]otwithstanding MSFT's clear bullishness regarding Surface's prospects investor expectations for this tablet remain very low, such that any degree of success would likely come as a positive surprise to investors . . . ." The speculation about Surface RT being a disappointment only escalated when, in a November 11, 2012 interview with the French newspaper *LeParisien*, Ballmer let it slip that sales of the Surface RT up to that point had been "*modest*."  Reporters jumped on the comment.  As the *Business Insider* commented, "Ballmer admitting that Surface sales were 'modest' was something of a surprise, because, well, it doesn't sound all that good."[12]

34.     The next day, November 12, 2012, it was announced that 23 year Microsoft veteran and Windows Division President Sinofsky would be leaving the Company.  As reported at the time, this "'shocking' departure is seen by many as an attempt by CEO Steve Ballmer to increase his control of the company as it faces increased competition from Apple and Google."[13]  Analysts found Sinofsky's departure "all the more telling, in our view, given Ballmer's recent comment that surface sales had started 'modestly'"[14] and reported that "[b]ased on the timing of the resignation, we

---

[11]    John Di Fucci, *Notes from the Road with Microsoft IR*, J.P. Morgan, July 30, 2012.

[12]    Jay Yarow, *Microsoft: When Steve Ballmer Said Surface Sales Were 'Modest,' Here's What He Really Meant . . .* , Business Insider, Nov. 12, 2012.

[13]    Mark Prigg, *Microsoft's Windows boss leaves just days after launching 'make or break' software and tablet*, Daily Mail, Nov. 13, 2012.

[14]    Jason Maynard, *Equity Research*, Wells Fargo Securities, Nov. 13, 2012.

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                    - 11 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1  believe there is a high probability that Windows 8 and Surface may not be meeting internal

2  expectations . . . ."[15]

3      35.    Microsoft quickly tried to control the damage done by Ballmer's comment and

4  Sinofsky's departure, publicly claiming:

5
6      "*Steve's use of the term 'modest' was in relation to the company's approach in
7      ramping up supply and distribution of Surface with Windows RT*, which has only
       been available via our online store and certain Microsoft retail stores in the U.S.
8      *While our approach has been modest, Steve notes the reception to the device has
       been fantastic* which is why he also stated that 'soon, it will be available in more
       countries and in more stores.'"

9  During a November 27, 2012 conference call with analysts, defendant Reller, who had replaced

10 Sinofsky and now reported directly to Ballmer, elaborated:  "*We chose quite limited distribution*

11 *initially so that we could make sure that we were seeing how [the Surface RT] landed*. . . .  And so

12 it means – it is very limited distribution, which was what Steve was referring to in his comments in

13 Europe."  As part of the damage control, Microsoft also claimed that it was having difficulty keeping

14 its supplies of the Surface RT up and Ballmer quipped that it's a "'good sign'" and the Company

15 will "'fix this problem quickly.'"  Following Ballmer's statements, *Forbes* reported that, "[i]n July,

16 Ballmer said that Microsoft's goal was to sell a few million units in the next 12 months.  His latest

17 comments indicate that Microsoft will be able to meet that goal."[16]

18     36.    Despite Microsoft's efforts to "clarify" Ballmer's "modest" statement and the

19 departure of Sinofsky, rumors persisted that Surface RT sales were not meeting expectations.

20 Analysts speculated that Microsoft had sold fewer than one million Surface RT tablets as of

21 December 31, 2012, and in late November 2012 it was reported that Microsoft had cut its orders of

22 Surface RT tablets in half.  A *CNET* article titled "Microsoft Surface sales well below shipments,

23 says iSuppli," cited industry analyst Rhoda Alexander and "said she sees little evidence of continued

24

25 ───────────────
   [15]    Israel Hernandez, *Windows Chief Sinofsky Out-Clean Negative for Stock*, MKM Partners, Nov. 13, 2012.

26 [16]    Louis Bedigian, *Microsoft Surface Sales are Taking Off*, Forbes, Nov. 13, 2012.

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)              - 12 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

production of the Microsoft RT device – which runs a limited version of Windows 8 on top of an ARM processor – in the first quarter [2013] because Microsoft is still trying to sell off inventory." The article continued, reporting "Surface RT has other challenges, too. The return rate on the device was 'very high,' Alexander said. 'If you put the high return rate together with low sell-through [sales out] rate, that's indicative of a problem . . . .'"

37.     Microsoft responded to these negative rumors, announcing that it would be expanding distribution of the Surface RT to consumer retail stores to meet purported demand, but did not disclose any actual sales numbers.  Nevertheless, as business writer Anthony Shields reported in December 2012: "Perhaps most unnerving is the fact that Microsoft was not even predicting big numbers during the Surface's launch in the first place."[17]  Shields continued, "[t]aking this into consideration, if Microsoft has fallen short of its initial sales predictions, it would be a major embarrassment for the company, and an indicator of its inability to catch up with its competitors." Gizmodo reported on December 11, 2012 that "Microsoft's first tablet already seem[s] to be on the ropes" and "[g]iven that this tablet is a beacon for Windows 8 adoption, there couldn't be more at stake."[18]

38.     Once again, defendant Reller was tasked with countering the perception that the Surface RT was foundering.  During a January 8, 2013 speech at the Consumer Electronics Show, Reller acknowledged that "it's really important for us to do well with Surface" and "[w]e are very, very focused on that."  Turning to the rumors and questions about lackluster sales, Reller tried to assure the analysts that Microsoft and the Surface RT were on track: "[W]e made a very explicit

---

[17]   Anthony Shields, *Microsoft Plans More Tablets as Analysts Lose Faith in the Surface RT*, Minyanville, Dec. 5, 2012.

[18]   Mark Spoonauer, *7 Ways to Save the Microsoft Surface*, Gizmodo.com, Dec. 11, 2012.

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS (2:13-cv-02039-RSM)          - 13 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

decision initially to launch this first-time product into our own stores so that we could have the opportunity to really watch, and watch carefully, and learn, and just get things right."  While Reller tried to manage expectations, analysts and investors waited for Microsoft's quarterly results and an indication of whether the Surface RT could help salvage Microsoft's future.

## DEFENDANTS' MISLEADING STATEMENTS AND MATERIAL OMISSIONS

### January 24, 2013 Conference Call and Form 10-Q

39.     On January 24, 2013, following the rumors of poor Surface RT sales and Microsoft's efforts to explain away Ballmer's "modest sales" comment, the Company released its second quarter 2013 ("2Q 2013")[19] financial results and hosted a conference call with analysts and investors. Representing Microsoft on the public conference call were defendant Klein, Chris Suh ("Suh"), the Company's General Manager of Investor Relations, Frank Brod ("Brod"), the Company's Chief Accounting Officer, and John Seethoff ("Seethoff"), the Company's Deputy General Counsel. Addressing 2Q 2013 results for Microsoft's Windows Division, Suh stated: "***While inventory levels ended the quarter at slightly higher levels than the prior year, we believe them to be in a healthy range given the recent launch*** [of Windows 8 and Surface RT].  ***Non-OEM revenue grew over 40%, driven by Windows 8 upgrades, sales of Surface***, and double-digit growth in volume licensing."  Klein then stated: "During the quarter, we launched the first device in our Surface family of products.  ***We recently increased production and expanded distribution to third-party retail partners***."

40.     During the question-and-answer portion of the conference call, Klein was repeatedly asked about the Surface RT tablets and Microsoft's inventory of the devices.  In response to a question about the profitability of the Surface RT, Klein stated:  "As we said, we think of Surface as one part of the overall Windows 8 story.  ***Certainly, this quarter it was a contributing factor to the***

---

[19]     During the relevant period, Microsoft's fiscal year ended on June 30.  Accordingly, 2Q 2013 covers the period October 1-December 31, 2012, third quarter 2013 ("3Q 2013") covers the period January 1-March 31, 2013 and fourth quarter 2013 ("4Q 2013") covers the period April 1-June 30, 2013.

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS (2:13-cv-02039-RSM)

- 14 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1  *revenue growth in the Windows business* and what it does is it highlights some interesting

2  innovation that can happen to demonstrate the power of Windows 8 when tightly integrated with

3  hardware and software and some new categories of devices and we're – *obviously had limited*

4  *distribution this quarter in our stores, and as you know, we're excited about expanding that*."

5        41.     Morgan Stanley analyst Adam Holt followed up with Klein, asking if he could "touch

6  on inventory in the quarter?  It looked like it was a little above what it normally is[.]"  In response,

7  Klein stated: "Yes, *the inventory is a function of both what is happening in the Xbox business and*

8  *Surface.  They're offsetting impacts this quarter.  Some of it is from Surface and then some of it is*

9  *from the Xbox business*."  When another analyst, Heather Bellini of Goldman Sachs, asked again

10  about the Windows Division inventory, Klein responded that "*in inventory, yes, you're thinking*

11  *about it right.  We saw the normal draw-down from the Xbox business and any offsetting increase*

12  *there was related to Surface*."

13        42.     Near the end of the conference call, J.P. Morgan analyst John DiFucci asked the

14  following:

15       Peter [Klein], you said that the Windows OEM revenue outperformed the x86 PC

16  market and your comments imply some Windows inventory build in the channel,
     which I believe you normally see during a quarter where the Windows launch as
     OEMs build inventory in preparation for the launch.  Would it be accurate to assume

17  that the Windows outperformance was primarily – relative to the PC market – was
     primarily due to the inventory build or was there something else there happening?

18       Was there anything else?

19  Klein responded as follows:

20       Yes, the three biggest components of the 11% total revenue growth and the
     11% adjusted for the recognition of the deferrals in the Windows business, were the

21  retail upgrades, the *sales of Surface*, and then multi-year licensing agreements within
     enterprises.  *To your point, there was some tailwind from inventory, which was*

22  *normally, as you highlight, what we see in a launch quarter, and as Chris said, it is*
     *within the healthy range that we typically see.*  But that was some tailwind.  But the

23  three big impacts [all] up on the Windows revenue were the retail upgrades, *sales of*
     *Surface*, and the enterprise annuity business, which continues to grow double-digits.

24        43.     On January 24, 2013, Microsoft also filed and publicly issued its 2Q 2013 Form 10-Q

25  with the SEC.  The Form 10-Q was signed by Brod and reviewed, approved and certified by

26  defendants Ballmer and Klein.  The January 24, 2013 Form 10-Q reported that, for 2Q 2013, the

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

- 15 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1  Company's "*[r]evenue increased, primarily due to the launch of Windows 8 and Surface* on

2  October 26, 2012" and "*Windows Division revenue increased from the prior year*, due in part to the

3  recognition of a net $622 million of revenue related to Windows Deferral, as well as *due to sales of*

4  *Surface* and Windows 8 upgrades." Microsoft's Form 10-Q reported that for the first half of fiscal

5  year 2013, the revenue decrease in the Windows Division due to a Windows upgrade offer and a

6  decline in the x86 PC market was "*offset in part by sales of Surface* and Windows 8 upgrades."

7  The Form 10-Q also reported that Microsoft's total inventories were $1.661 billion, including $939

8  million in finished goods.

9      44.    Microsoft's 2Q 2013 Form 10-Q also contained certifications signed by defendants

10  Ballmer and Klein which stated, in pertinent part:

11      1.    I have reviewed this quarterly report on Form 10-Q of Microsoft Corporation;

12      2.    Based on my knowledge, this report does not contain any untrue statement of
        a material fact or omit to state a material fact necessary to make the statements made,

13      in light of the circumstances under which such statements were made, not misleading
        with respect to the period covered by this report;

14
15      3.    Based on my knowledge, the financial statements, and other financial
        information included in this report, fairly present in all material respects the financial
        condition, results of operations and cash flows of the registrant as of, and for, the

16      periods presented in this report;

17      4.    The registrant's other certifying officer and I are responsible for establishing
        and maintaining disclosure controls and procedures (as defined in Exchange Act

18      Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as
        defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

19
20          a)    Designed such disclosure controls and procedures, or caused such
            disclosure controls and procedures to be designed under our supervision, to
            ensure that material information relating to the registrant, including its

21          consolidated subsidiaries, is made known to us by others within those
            entities, particularly during the period in which this report is being prepared;

22
23          b)    Designed such internal control over financial reporting, or caused
            such internal control over financial reporting to be designed under our
            supervision, to provide reasonable assurance regarding the reliability of

24          financial reporting and the preparation of financial statements for external
            purposes in accordance with generally accepted accounting principles;

25
26          c)    Evaluated the effectiveness of the registrant's disclosure controls and
            procedures and presented in this report our conclusions about the

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                          - 16 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

> d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

> a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

> b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

45.  Following defendants' statements during the January 24, 2013 conference call and in Microsoft's 2Q 2013 Form 10-Q, securities analysts and reporters commented on the Surface tablets, Microsoft's inventory and the Company's financial results:

- In a January 25, 2013 publication, J.P. Morgan reported on defendants' statements and commented: "Management did note that 'while inventory levels ended the quarter at slightly higher levels than the prior year we believe them to be in a healthy range given the recent launch'" and "investors should realize that a buildup of inventory will likely reverse at some point, potentially in the current period."

- Reiterating defendants' statements, Deutsche Bank reported on January 25, 2013 that "Windows 8 does not seem to have reversed the continued decline in PC shipments, but contribution from Surface and continued strength in volume licensing should help drive growth."

- Commenting on the Surface RT, Credit Suisse reported the same day that "we estimate that the company sold ~700,000 units in the December quarter, and we would expect increased shipments during the March quarter given expanded

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

- 17 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

distribution agreements." Based on defendants' statements, the Credit Suisse report continued, "we believe that Windows 8 and Microsoft Surface will have more meaningful positions in tablets" and "the success of Windows 8 and Surface are truly the keys to future growth and stock performance."

- In another January 25, 2013 report following defendants' statements regarding the Surface RT tablets, Cowen & Company told investors that "we believe the negative sentiment on MSFT can ease over the coming months."

- Three days later, on January 28, 2013, the *Washington Internet Daily* also reported: "The Surface tablet was a significant 'contributing factor' to the 24 percent year-over-year revenue growth that Microsoft reported in its Windows Division for Q2 ended Dec. 31." The article continued, "[o]f the Windows 8 launch in general, Klein said Microsoft 'learned a lot' in Q2 'about the types of experiences and scenarios and, to some extent, the price points the customers are looking for from their devices.' The company 'saw some really great demand for some of the touch devices that we brought to market,' but 'in some cases, we didn't have the supply that we needed to satisfy that demand.'"[20]

46.     Defendants Microsoft, Klein and Ballmer's statements on January 24, 2013, as set forth in ¶¶39-43, were materially misleading when made because defendants failed to disclose that Microsoft had in excess of five million units of the Surface RT tablet, including components for the tablets, in returned and unsold inventory. Defendants' statements that the Windows Division revenue growth was "driven by sales" of the Surface RT, and that the decline in the x86 PC market was "offset in part by sales of Surface," created a positive impression of Microsoft's Surface RT tablet sales, but failed to disclose the Company's material inventory of unsold units of those tablets. Defendants' statements regarding inventory, including that inventory levels were in a "healthy

---

[20]     Microsoft's Windows 8 operating system was developed for use with touch-screen enabled devices. Accordingly, Microsoft representatives used the term "touch devices" to describe products that had this capability, including the Surface tablets and PCs manufactured and marketed by OEM partners.

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                    - 18 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1 range," and that Microsoft was increasing production and expanding distribution of the Surface

2 tablets also gave the impression that the Company did not have excess inventory of millions of units

3 of unsold and returned Surface RT tablets and components.

4     47.    As a result of defendants' failure to disclose the true, material facts regarding

5 Microsoft's inventory of Surface RT tablets, the Company's common stock traded at artificially

6 inflated prices above $27.00 per share following January 24, 2013.

7     48.    As Microsoft had announced in January 2013, the Company formally released the

8 Surface Pro tablet on February 9, 2013.  Upon release, the Surface Pro was made available for sale at

9 both Microsoft's own physical and online stores and large retailers including Staples and Best Buy.

10 **February 13, 2013 Goldman Sachs Technology & Internet Conference**

11     49.    On February 13, 2013, defendant Klein, representing Microsoft, spoke at the

12 Goldman Sachs Technology & Internet Conference and responded to numerous questions regarding

13 the Surface tablets.  In response to a question regarding what lessons Microsoft had learned from

14 Surface RT, Klein stated:

15     I think with Surface RT, there are a couple of things that we've learned, and part of it
16     stems from our approach. As you know, ***we had a very controlled launch, and part
    of the reason for that is so we could really observe and understand the experience***
17     ***launching a new product, new operating system, new architecture, and our own***
    ***device***. So, that was limited to our stores, and our online, and some limited
18     geographies.

19     . . . And ***so what we've done is to broaden the reach of what we're doing in***
    ***distribution, get it out there in more geographies, and third party retail so people***
20     ***can actually come in, touch it, and play with it, and really get the full experience so***
    ***that they really understand that***.  And so we're going to take that and now broaden
21     that. Of course, with the introduction of Pro, we'll start with a little bit more
    expanded distribution, and continue to expand the capacity.

22     50.    Defendants Microsoft and Klein's statements on February 13, 2013, as set forth in

23 ¶49, were materially misleading when made because defendants failed to disclose that Microsoft had

24 in excess of five million units of the Surface RT tablet, including components for the tablets, in

25 inventory. Defendants' statement regarding the "controlled launch" of the Surface RT and

26 broadening distribution created the impression that sales of the tablet were not below expectations,

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

- 19 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

but intentionally limited by the Company, when, in fact, Microsoft had excess inventory of millions of units of unsold and returned Surface RT tablets and components.

51.     As a result of defendants' failure to disclose the true, material facts regarding Microsoft's inventory of Surface RT tablets, the Company's common stock continued to trade at artificially inflated prices above $27.00 per share following February 13, 2013.

52.     On March 19, 2013, an article published by the *Korean JoongAng Daily*, in conjunction with the *New York Times*, reported that "Microsoft has sold a little more than a million of the Surface RT version and about 400,000 Surface Pros since their debuts, according to three people, who asked not to be named because sales haven't yet been made public.  The company had ordered about 3 million Surface RTs, they said."  The article continued, quoting a report from Rick Sherlund, an analyst with Nomura Holdings: "For Microsoft, the stakes are high. PC shipments dropped last year for the first time in a decade, and analysts predict that they will fall again in 2013 . . . .  'The tide continues to go out on PC sales as consumers and emerging market users prefer tablets and smartphones to Windows based PCs.'"

53.     Commenting on the market for the Surface RT, on March 11, 2013 MKM Partners analyst Israel Hernandez reported: "In our view, to be a viable product, Microsoft needs to materially cut [the Surface RT tablet's] price at the risk of sacrificing margins and further alienating OEMs that already are wary of Microsoft as a hardware competitor."  On March 21, 2013, in response to continuing reports of underperforming Surface tablet sales, J.P. Morgan issued a report based on meetings with Suh and Microsoft's Director of Investor Relations, Lisa Nelson: "Regarding Surface (presumably the RT version), the company noted that the strategy of limiting its initial distribution likely hurt the device's initial adoption, while paradoxically, releasing the device too early to third-party retailers such as Best Buy and Staples was also problematic given that these outlets didn't fully appreciate how to position or sell the Surface device."

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                                    - 20 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

**April 18, 2013 Conference Call and Form 10-Q**

54.     On April 18, 2013, Microsoft hosted a conference call with analysts and investors. Representing Microsoft on the public conference call were defendant Klein, and Microsoft executives Suh, Brod and Seethoff.  Addressing the 3Q 2013 results for Microsoft's Windows Division, Suh stated that "*[n]on-OEM revenue grew 40% this quarter, driven by sales of Surface*, and continued double-digit growth involving licensing."  With regard to inventory, Suh stated: "***This quarter, inventory levels were drawn down as the channel awaits new Windows 8 devices***." Discussing 4Q 2013, Klein stated that "[i]n the Windows Division, *similar to this quarter, revenue will continue to reflect sales of Surface* and strong volume licensing, while OEM revenue will be impacted by the declining traditional PC market as we work to increase our share in tablets."  In response to a question from Credit Suisse analyst Phillip Winslow regarding the distribution of Surface tablets and "how the product is doing versus your expectations," Klein also stated "we are expanding both the products and distribution.  And that is broadly all devices inclusive of Surface. We are expanding distribution of Surface, we're now in 22 countries, 70 retailers."

55.     The same day, April 18, 2013, Microsoft filed and publicly issued its 3Q 2013 Form 10-Q with the SEC.  The Form 10-Q was signed by Brod and reviewed, approved and certified by defendants Ballmer and Klein.  The April 18, 2013 Form 10-Q reported that, for 3Q 2013, the Company's "*[r]evenue increased, primarily due to revenue from new products and services, including Windows 8 and Surface*" and that "*[r]evenue from Surface and increased commercial sales of Windows was offset by the impact on revenue of a decline in the x86 PC market*."  The Form 10-Q also reported that Microsoft's total inventories were $2.133 billion, including $1.320 billion in finished goods.

56.     Microsoft's 3Q 2013 Form 10-Q also contained certifications signed by defendants Ballmer and Klein which stated, in pertinent part:

1.     I have reviewed this quarterly report on Form 10-Q of Microsoft Corporation;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made,

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)               - 21 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

      a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

      b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

      c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

      d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

      a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

      b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

907786_1

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS (2:13-cv-02039-RSM)

- 22 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

57.     On April 18, 2013, Microsoft also announced that defendant Klein would be leaving the Company and would be replaced as CFO by June 30, 2013.  Microsoft reported that Klein would receive $2 million in 2014 in exchange for confidentiality and non-compete agreements.

58.     Following defendants' statements during the April 18, 2013 conference call and in Microsoft's 3Q 2013 Form 10-Q, securities analysts and reporters again commented on the Surface tablets and Microsoft's financial results:

- An April 19, 2013 Janney Capital Market report commented that Microsoft's "newly introduced Surface tablet sales have offset [the] decline in its PC-based Windows business, resulting in flat Windows business for the quarter."

- A Hillard Lyons report the same day reiterated: "Windows division revenue of $4.61 billion was down only slightly y/y despite a decline in the PC market of 14% as sales to non PC manufacturers jumped 40% y/y.  This can be attributed to sales of the Surface tablet and Windows enterprise sales."  The report continued: "We believe FY'12/FY'13 mark a watershed moment where free cash flow begins to decline. This decline could be substantial if the lack of PC demand is not met with considerably higher sales of tablets and other Windows devices."

- J.P. Morgan also issued a report on April 19, 2013 and commented: "Although modest, we estimate Surface sales added about 9 points of growth to Windows results, without which Windows revenue would have declined about 9% y/y, adjusted for tech guarantees."

59.     Defendants Microsoft, Klein and Ballmer's statements on April 18, 2013, as set forth in ¶¶54-55, were materially misleading when made because defendants failed to disclose that Microsoft had in excess of five million units of the Surface RT tablet, including components for the tablets, in inventory.  Defendants' statements that Windows Division revenue growth was "driven by sales of Surface" and "[r]evenue from Surface and increased commercial sales of Windows was offset by the impact on revenue of a decline in the x86 PC market" created a positive impression of

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

- 23 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1    Microsoft's tablet sales, but failed to disclose the Company's material inventory of Surface RT

2    tablets.  Defendants' statements regarding inventory levels and that Microsoft was increasing

3    production and expanding distribution of the Surface tablets also gave the impression that the

4    Company did not have excess inventory of millions of units of unsold and returned Surface RT

5    tablets and components.

6         60.    As a result of defendants' failure to disclose the true, material facts regarding

7    Microsoft's inventory of Surface RT tablets, the Company's common stock price continued to

8    increase and traded at artificially inflated prices above $29.00 per share following April 18, 2013.

9    **May 14, 2013 JP Morgan Global Technology, Media, and Telecom Conference**

10        61.    On May 14, 2013, defendant Reller spoke at the JP Morgan Global Technology,

11   Media, and Telecom Conference in Boston, Massachusetts and responded to numerous questions

12   regarding the Surface tablets.  In response to a question regarding the market and reception for the

13   Surface RT, Reller stated, "*[o]ur deep customer satisfaction surveys on the product show that*

14   *there's very high satisfaction ratings with Surface*.  That's true on Surface Pro.  That's true on

15   Surface RT. . . .  So we know that customers love the Surface product."  When asked about rumors

16   of supply chain bottlenecks, Reller stated "*we really see that the touch supply is getting so much*

17   *better, literally, week by week, month by month.  And so the touch supply constraints are rapidly*

18   *working themselves through*."

19        62.    Defendants Microsoft and Reller's statements on May 14, 2013, as set forth in ¶61

20   were materially misleading when made because defendants failed to disclose that Microsoft had in

21   excess of five million units of the Surface RT tablet, including components for the tablets, in

22   inventory.  Defendants' statement regarding the "high satisfaction ratings with Surface" and

23   assertion that "the touch supply is getting so much better" and "supply constraints are rapidly

24   working themselves through" created the impression of increased demand for Surface tablets, but

25   failed to disclose that Microsoft had excess inventory of millions of units of unsold and returned

26   Surface RT tablets and components.

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

- 24 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

63.     As a result of defendants' failure to disclose the true, material facts regarding Microsoft's inventory of Surface RT tablets, the Company's common stock price continued to increase and traded at artificially inflated prices above $32.00 per share following May 14, 2013.

**May 30, 2013 Sanford C. Bernstein's Strategic Decisions Conference**

64.     On May 30, 2013, Kevin Turner ("Turner"), Microsoft's Chief Operating Officer, represented and spoke on behalf of the Company at Sanford C. Bernstein's Strategic Decisions Conference in New York, New York.  During the conference, Turner discussed the Surface RT and Surface Pro and, in response to a question regarding the "limited distribution" of the Surface tablets reiterated defendants' prior statements:  "Stay tuned, *it's coming to more and more retail locations. It's coming to more and more channels.  And we're building our supply chain.  It's a whole new area for us as a company, and it's one that we're being thoughtful on but we're bringing it out strategically* and it will continue to go broader and broader."

65.     The May 30, 2013 statement by Microsoft representative Turner, as set forth in ¶64, was materially misleading when made because it failed to disclose that Microsoft had in excess of five million units of the Surface RT tablet, including components for the tablets, in inventory.  The statement regarding expanding sales locations, "building our supply chain" and "bringing [Surface tablets] out strategically" created a positive impression of Surface sales, but failed to disclose that Microsoft had excess inventory of millions of units of unsold and returned Surface RT tablets and components.

66.     As a result of defendants' failure to disclose the true, material facts regarding Microsoft's inventory of Surface RT tablets, the Company's common stock price continued to increase and traded at artificially inflated prices above $34.00 per share following May 30, 2013.

### DISCLOSURE OF THE TRUTH ABOUT MICROSOFT'S SURFACE RT INVENTORY

67.     On June 18, 2013, the Wall Street Journal's "All Things D" reported that "Microsoft is now offering significant discounts on Surface RT to schools around the world."  "According to Microsoft, the rational for the discount is its 'long tradition of offering special pricing to education

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                    - 25 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1   customers,'" but, the article continued, "more practically it's an easy way to juice sales and whittle

2   down inventory of a tablet that has been slow to gain traction in the consumer market."  The article

3   further speculated that "the company may be sitting on some serious inventory. That alone may be

4   enough to justify offering a fire-sale discount like this to the education market, particularly if there

5   are some next-generation Surface tablets in the pipeline."  Microsoft representatives did not

6   comment in or respond to the article.

7          68.     Finally, following the close of the market on July 18, 2013, the Company filed a

8   Form 8-K with the SEC and issued a press release reporting that *Microsoft was forced to take a*

9   *$900 million charge to account for unsold and overvalued Surface RT inventory.*  During a

10  conference call following the issuance of the press release, Microsoft's new CFO, Amy Hood,

11  disclosed that the Company "reduced the price of Surface RT by $150 to $349 per device. As a result

12  of this price change, as well as inventory adjustments for related parts and accessories, *we recorded*

13  *a $900 million charge to our income statement*."  Despite the magnitude of the disclosure,

14  defendants Ballmer, Klein and Reller did not appear on the conference call.

15         69.     Investors were shocked by Microsoft's disclosure.  In after-hours trading, the

16  Company's stock price dropped 6.3%, and, by the close of trading on July 19, 2013, *Microsoft's*

17  *stock price had plunged over 11%*, from $34.93 to $30.95 per share.  The stock price decline in

18  response to the disclosure resulted in a *market capitalization loss of over $30 billion* and was the

19  worst single day sell-off of Microsoft shares in more than 13 years.

20         70.     Like Microsoft's investors, analysts and reporters covering the Company were

21  surprised by the size of the charge to income and the resulting disclosure of the volume of

22  Microsoft's inventory of unsold Surface RT tablets.  A July 18, 2013 *International Business Times*

23  article titled "Microsoft Writes Off $900 Million on Surface Tablets" reported "*the company took*

24  *an unexpected $900 million . . . charge for its inventory of unsold Surface tablets*" and "taking the

25  . . . write-down into account, it would *suggest that Microsoft has a store of six million unsold*

26  *Surface tablets*."  Similarly, Mary Jo Foley wrote in ZDNet, "Microsoft announced a $900 million

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                    - 26 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1   'inventory adjustment' charge for its Surface RTs, parts and accessories on July 18.  **That write-**

2   **down completely overshadowed the performance of the rest of the products and services that**

3   **contributed to the company's Q4 2013 earnings**."  Foley continued: "The biggest question, to my

4   mind, about today's **unexpected Surface RT write-down** is how did Microsoft find itself in this

5   predicament in the first place?" and "why did Microsoft make so many Surface RTs?  If some back-

6   of-the-napkin calculations are right, **Microsoft may be sitting on an inventory of 6 million unsold**

7   **Surface RTs**."

8           71.     On July 19, 2013, analysts and reporters continued to flag Microsoft's Surface RT

9   disclosure and the impact the disclosure had on the Company and investors.  A *Huffington Post*

10  article titled "Microsoft's Surface RT Didn't Have to be a $900 Million Disaster" reported:

11          In some unknown warehouse presumably sits a pile of millions of beautiful,
        unused Surface RTs, the tablet computer that was supposed to resurrect Microsoft.
12      **Late Thursday, the company revealed for the first time that it has failed to entice**
        **many people to buy the product, and the software maker made an unexpected,**
13      **$900 million writeoff on its unsold Surface inventory**. The losses don't end there:
        On Friday morning, Microsoft shed $30 billion in value after its stock tumbled 10
14      percent.

15          According to one calculation, **that loss translates to nearly 6 million sleek**
        **and rather stunning machines that consumers have decided they don't care to own.**
16      **No matter how the math works out – the company would not provide exact sales**
        **numbers – that heap of Surfaces just burned a nearly $1 billion hole in Microsoft's**
17      **pocket.**

18  *Wall Street Journal* reporter Paul Vigna similarly reported:

19          Microsoft shares are getting hit hard on Friday, down 12% on the heels of the
        company's worst earnings "miss" since 2004. . . .
20
21          **A big chunk of that drop in profit was the $900 million write-down related**
        **to its Surface tablet, but don't let that fool you:  it may euphemistically be called a**
22      **"write-down," but that is a simple loss.  The write-down, Janney analyst Yum Kim**
        **wrote, "is an admission by the company that its first attempt in the tablet market**
        **was not successful**."
23
24          What's worse, Surface was one of the company's key growth drivers . . . .

25          72.     Scores of articles on July 19, 2013 focused on the Surface RT disclosure.  A PC

26  Magazine article titled "What Should Microsoft Do With its Surface Surplus" headlined: "**The word**

    **is out:  Microsoft lost nearly one billion dollars on the Surface tablet.  And there are apparently**

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

*six million units sitting in a warehouse somewhere*."   An article on ExtremeTech.com reported "Microsoft's financial report also shows that it took a $900 million charge for 'Surface RT inventory adjustments.'  Dividing that by the recent $150 price cut suggests that *Microsoft could be sitting on as many as six million unsold Surface RTs*."   Similarly, a *Hexus Technology News* article confirmed *Microsoft "surprised investors by including a $900 million write-down to pay for the Surface RT misadventure*. . . .  This write-down is a result of the company misestimating the market performance of the Surface RT.  It is the result of errors in judgment concerning how popular the Surface RT would be at the price which would make it a profitable product for Microsoft."

73.   The following day, July 20, 2013, a *Mint/Wall Street Journal* story, titled "Microsoft Shares Hit by Biggest Sell-Off Since 2000," reported that "*Microsoft's earnings were wrecked by a $900 million writedown on the value of unsold Surface tablets*" and "Friday's loss means about *$36 billion has been wiped off Microsoft's market value in one day*."   Another online article on PhoneArena.com, titled "Microsoft shares plunge over 11% after Microsoft Surface RT inventory write-down, earnings shortfall," summed up the reaction to the disclosure of the truth about the Surface RT tablet:

> Shares of Microsoft plunged 11.4% on Friday, closing down $4.04 to $31.40. For Microsoft, it was the sharpest one-day decline of the company's shares in 11 years and came after the company reported its quarterly earnings.  *Yes, Microsoft earned nearly $5 billion for the three month period, but a $900 million write-off of Surface RT tablets held in inventory rattled investors* along with a gigantic 16 cents a share earnings shortfall for the quarter. . . .
>
> . . . As recently as April, 60% of the analysts covering the stock had a 'buy' signal on the shares.  Today, that number is down to 25% which is a 20 year low.

As a *Eurotrade* article titled "Microsoft's Surface Strategy: A Tragedy of Errors for Channel" put it, "*There's no polite way to say this anymore: Microsoft is out of touch, out of line and out of excuses* . . . .  A mess of contradictory decisions and statements has provided a mountain of evidence that Microsoft has lost its grasp not only on the basics of channel economics but also the value of the solution provider partner."

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

- 28 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

74.      On July 30, 2013, two weeks after the Surface RT disclosure, Microsoft filed and publicly issued its fiscal year and 4Q 2013 Form 10-K with the SEC.  The Form 10-K confirmed the $900 million charge for the "Surface RT inventory adjustments" which "decreased [4Q 2013] operating income by $900 million, net income by $596 million, and diluted earnings per share by $0.07."  The Form 10-K also disclosed that total revenue from the sales of the Surface RT and Surface Pro during fiscal year 2013 was $853 million, significantly less than the inventory write-down of the Surface RT alone.  Jeremy Davies, co-founder of analyst firm CONTEXT, described the July 2013 disclosures about the Surface RT as a "spectacular disaster" and reported "***Microsoft had to tell the world what is going on.  The truth has finally come out, but nobody realized the scale of the problem***."[21]

75.      Microsoft's Form 10-K coincided with an internal "town hall" event in which defendant Ballmer, in a massive understatement, was reported to have told the Company's employees that he "overestimated" demand for the Surface RT and "[w]e built a few more devices than we could sell."  Within a month, Ballmer announced that he would be retiring as Microsoft's CEO.  Ballmer acknowledged that the retirement was earlier than he expected and analysts speculated that the $900 million Surface RT inventory charge was "the final straw for Microsoft's senior figures, who demanded Steve Ballmer take the fall for the project's failure."[22]  Reinforcing the perception that Ballmer was being forced out of the Company as a result of his role in the Surface RT disaster, Microsoft's October 2013 Proxy Statement disclosed that the Company's Board of Directors cut Ballmer's fiscal year 2013 bonus as a result of the decline in the Windows Division income and the $900 million Surface RT inventory charge.

---

[21]     Hannah Breeze, *Microsoft Finally Fesses Up Over Diabolical Surface Sales*, Computer Reseller News UK, July 31, 2013.

[22]     Daniel Cooper, *Microsoft's Surface 2: New tablet, same problems*, Engadget, Sept. 23, 2013 (citing Gregg Keizer, *Ballmer Forced Out After $900M Surface RT Debacle*, Computerworld, Aug. 23, 2013).

907786_1

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS (2:13-cv-02039-RSM)                - 29 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1

**LOSS CAUSATION/ECONOMIC LOSS**

2        76.      During the Class Period, as detailed herein, defendants engaged in a scheme to

3  deceive investors and the market and a course of conduct that artificially inflated and maintained the

4  price of Microsoft common stock and operated as a fraud or deceit on Class Period purchasers of

5  Microsoft common stock by misrepresenting and omitting material information about the

6  Company's Surface RT inventory.  When defendants' prior misrepresentations and omissions

7  became apparent to the market on July 18, 2013, the price of Microsoft common stock fell

8  precipitously, as the prior artificial inflation came out of the price.  As a result of their purchases of

9  Microsoft common stock during the Class Period, Lead Plaintiffs and other members of the Class, as

10  defined in ¶81, suffered economic loss, *i.e.*, damages, under the federal securities laws.

11        77.      Defendants' misleading statements and omissions, identified herein at ¶¶39-43, 49,

12  54-55, 61 and 64, had the intended effect and caused Microsoft common stock to trade at artificially

13  inflated levels throughout the Class Period.

14        78.      As a direct result of the July 18, 2013 disclosure of the truth about Microsoft's

15  Surface RT inventory, and as illustrated in the chart below, the price of the Company's common

16  stock suffered a significant decline.  By the close of the market on July 19, 2013, Microsoft's

17  common stock price had dropped 11.4%, a loss of $3.98 per share.  As detailed in ¶¶70-74, analysts

18  and reporters largely attributed the drop to Microsoft's Surface RT disclosure and the resulting

19  impact on earnings.

20

21

22

23

24

25

26

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                        - 30 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423



79. The decline in Microsoft's common stock price on July 19, 2013 was a direct result of the nature and extent of defendants' prior misstatements and omissions being revealed to investors and the market. The timing and magnitude of Microsoft's stock price decline evidences the impact defendants' statements had on the stock price during the Class Period and negate any inference that the loss suffered by Lead Plaintiffs and other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific factors unrelated to defendants' fraudulent conduct. Indeed, as illustrated in the chart above, on the same day that Microsoft's common stock share price closed down over 11%, the Standard & Poor's 500-stock index rose to a record high and both the Dow Jones Industrial Average and the NASDAQ Composite Index (even including Microsoft) moved less than 1%. The economic loss suffered by Lead Plaintiffs and other members of the Class was a direct result of defendants' fraudulent scheme to artificially maintain the

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

- 31 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1  inflated prices of Microsoft common stock and the subsequent decline in the value of those securities

2  when defendants' prior misrepresentations and omissions were revealed

### APPLICABILITY OF PRESUMPTION OF RELIANCE

4       80.     Lead Plaintiffs and the Class are entitled to a presumption of reliance.  During the

5  Class Period, defendants made material misstatements and omissions that artificially inflated the

6  price of Microsoft common stock.  Lead Plaintiffs and other members of the Class purchased

7  Microsoft common stock between the time defendants misrepresented and failed to disclose material

8  facts regarding the inventory of Surface RT tablets and the time the true facts were disclosed,

9  without knowledge of the misrepresented and omitted facts.  At all relevant times, the market for

10 Microsoft common stock was efficient and the price of Microsoft common stock was impacted by

11 defendants' misstatements and omissions.

### CLASS ACTION ALLEGATIONS

13      81.     Lead Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

14 Rules of Civil Procedure on behalf of all purchasers of Microsoft common stock during the January

15 24, 2013 through July 18, 2013 Class Period who were damaged thereby (the "Class").  Excluded

16 from the Class are defendants and their families, the officers and directors of Microsoft, members of

17 their immediate families and their legal representatives, heirs, successors or assigns and any entity in

18 which defendants have or had a controlling interest.

19      82.     The members of the Class are so numerous that joinder of all members is

20 impracticable.  The disposition of their claims in a class action will provide substantial benefits to

21 the parties and the Court.  Throughout the Class Period, Microsoft common stock was actively

22 traded on the NASDAQ Stock Market, the second largest stock exchange in the world.  While the

23 exact number of Class members is unknown to Lead Plaintiffs at this time and can only be

24 ascertained through appropriate discovery, Lead Plaintiffs believe that there are thousands of

25 members in the proposed Class.  During the Class Period, there were more than 8.3 billion shares of

26 Microsoft common stock outstanding.  Record owners and other members of the Class may be

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)                    - 32 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1    identified from records maintained by Microsoft or its transfer agent(s) and may be notified of the

2    pendency of this action by mail, using the form of notice similar to that customarily used in

3    securities class actions.

4           83.    There is a well-defined community of interest in the questions of law and fact

5    involved in this case.  Common questions of law and fact exist as to all members of the Class and

6    predominate over any questions solely affecting individual members of the Class.  Among the

7    questions of law and fact common to the Class are:

8                  (a)    Whether the federal securities laws were violated by defendants' acts and

9    omissions as alleged herein;

10                 (b)    Whether statements made by defendants to the investing public during the

11   Class Period misrepresented and omitted material facts about Microsoft and the Surface RT tablet;

12   and

13                 (c)    To what extent the members of the Class have sustained damages and the

14   proper measure of damages.

15          84.    Lead Plaintiffs' claims are typical of those of the Class because Lead Plaintiffs and

16   the Class sustained damages as a result of defendants' wrongful conduct.

17          85.    Lead Plaintiffs will adequately protect the interests of the Class and have retained

18   counsel who are experienced in securities and class action litigation.  Lead Plaintiffs have no

19   interests which conflict with those of the Class.

20          86.    A class action is superior to all other available methods for the fair and efficient

21   adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

22   damages suffered by individual Class members may be relatively small, the expense and burden of

23   individual litigation make it impossible for members of the Class to individually redress the wrongs

24   done to them.  There will be no difficulty in the management of this action as a class action.

25

26

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)            - 33 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

87.     Lead Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.  Count I is brought pursuant to §10(b) of the 1934 Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

88.     During the Class Period, Microsoft, through its officers, management and agents, and the individual defendants, Ballmer, Klein and Reller, disseminated or approved the statements specified in ¶¶39-43, 49, 54-55, 61 and 64, which they knew or recklessly disregarded were misleading in that they failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

89.     Microsoft, the individual defendants and Microsoft's officers, management and agents directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails, and/or the facilities of a national securities exchange: (a) employed devices, schemes and artifices to defraud; (b) made misleading statements and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Lead Plaintiffs and others similarly situated in connection with their purchases of Microsoft's common stock during the Class Period.  All defendants are sued as primary participants in the wrongful and illegal conduct charged herein and as controlling persons as alleged below.

90.     Microsoft, the individual defendants and Microsoft's officers, management and agents did not have a reasonable basis for their alleged false statements and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Microsoft common stock during the Class Period.

91.     Microsoft is liable for all materially false and misleading statements and omissions made during the Class Period, as alleged above, including the false and misleading statements and omissions included in Form 10-Q filings.

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

- 34 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1    92.    Microsoft is further liable for the false and misleading statements made by Microsoft's officers, management and agents and during conference calls and at conferences with investors and analysts, as alleged above, as the maker of such statements and under the principle of *respondeat superior*.

93.    Microsoft, the individual defendants and Microsoft's officers, management and agents, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct to conceal adverse material information about Microsoft's Surface RT inventory as specified herein.

94.    The allegations above establish a strong inference that Microsoft, as an entity, acted with corporate scienter throughout the Class Period, as its officers, management and agents had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth because they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such material misrepresentations and omissions were done knowingly or with recklessness, and without a reasonable basis, for the purpose and effect of concealing the truth about Microsoft's Surface RT inventory.  By concealing these material facts from investors, Microsoft maintained an artificially inflated share price throughout the Class Period.

95.    The individual defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  These defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the truth about Microsoft's Surface RT inventory and supporting the artificially inflated price of Microsoft common stock.  As demonstrated by defendants' misstatements and omissions, if they did not have actual knowledge of the misrepresentations and omissions alleged, defendants were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

907786_1

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)
- 35 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

96.     Lead Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Microsoft common stock.  Lead Plaintiffs and the Class would not have purchased Microsoft common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements and omissions.

97.     As a direct and proximate result of these defendants' wrongful conduct, Lead Plaintiffs and the other members of the Class suffered damages in connection with their purchases of Microsoft common stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

98.     Lead Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.  Count II is brought pursuant to §20(a) of the 1934 Act, 15 U.S.C. §78t(a).

99.     Defendants Ballmer, Klein and Reller acted as controlling persons of Microsoft within the meaning of §20 of the 1934 Act.  Microsoft controlled all of its employees and each of the individual defendants.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and awareness of Microsoft's finances and operations and the development, marketing and sales of the Surface tablets, as well as their intimate knowledge of the false statements and omissions made by the Company and disseminated to the investing public, defendants Ballmer, Klein and Reller had the power to influence and control and did influence and control, directly or indirectly, the Company's decision making, including the content and dissemination of the various statements which Lead Plaintiffs contend are false and misleading.  Defendants Ballmer, Klein and Reller participated in conference calls with investors and analysts and were provided with or had unlimited access to copies of the Company's public filings and other statements, alleged by Lead Plaintiffs to be misleading, prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

- 36 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1  100.   In particular, each of these defendants had direct and supervisory involvement in the

2  Company's day-to-day operations and, in particular, the design and implementation of Microsoft's

3  internal controls and risk management systems, and therefore is presumed to have had the power to

4  control or influence the particular transactions giving rise to the securities violations as alleged

5  herein, and exercised the same.  By reason of such conduct, defendants are liable pursuant to §20(a)

6  of the 1934 Act.

7  101.   As set forth above, defendants each violated §10(b) and Rule 10b-5 by their acts and

8  omissions as alleged in this Complaint.  By virtue of their positions as controlling persons,

9  defendants are liable pursuant to §20(a) of the 1934 Act.  As a direct and proximate result of the

10  defendants' wrongful conduct, Lead Plaintiffs and other members of the Class suffered damages in

11  connection with their purchases of Microsoft's publicly traded common stock during the Class

12  Period.

### PRAYER FOR RELIEF

14  WHEREFORE, Lead Plaintiffs respectfully pray for relief and judgment, as follows:

15  A.   Determining that this action is a proper class action, and certifying Lead Plaintiffs as

16  class representatives under Federal Rule of Civil Procedure 23;

17  B.   Awarding compensatory damages in favor of Lead Plaintiffs and the other members

18  of the Class against all defendants, jointly and severally, for all damages sustained as a result of

19  defendants' violations of the federal securities laws, in an amount to be proven at trial, including

20  interest thereon;

21  C.   Awarding Lead Plaintiffs and the Class their reasonable costs and expenses incurred

22  in this action, including counsel fees and expert fees; and

23  D.   Such equitable, injunctive or other and further relief as the Court may deem just and

24  proper.

25

26

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)               - 37 -

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

1

**JURY DEMAND**

2

     Lead Plaintiffs demand a trial by jury.

3

DATED:  January 24, 2014          ROBBINS GELLER RUDMAN

4

                                                            & DOWD LLP
                                             TOR GRONBORG
                                             MATTHEW I. ALPERT

5

                                             FRANCIS A. DIGIACCO

6

7

                                          s/ TOR GRONBORG

                                               TOR GRONBORG

8

9

                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101
                                          Telephone:  619/231-1058

10

                                          619/231-7423 (fax)

11

                                          ROBBINS GELLER RUDMAN
                                               & DOWD LLP

12

                                          SAMUEL H. RUDMAN
                                          DAVID A. ROSENFELD

13

                                          EVAN J. KAUFMAN
                                          58 South Service Road, Suite 200

14

                                          Melville, NY  11747

15

                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)

16

17

                                          Lead Counsel for Plaintiffs

18

                                          McDERMOTT NEWMAN PLLC
                                          DOUGLAS C. McDERMOTT

19

                                          1001 Fourth Avenue, Suite 3200
                                          Seattle, WA 98154

20

                                          Telephone:  206/684-9463
                                          206/749-9467 (fax)

21

                                          Liaison Counsel

22

23

24

25

26

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)       - 38 -

1

<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on January 24, 2014, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4  the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5  caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6  CM/ECF participants indicated on the attached Manual Notice List.

7      I certify under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed January 24, 2014.

9                                          s/ TOR GRONBORG
                                          TOR GRONBORG
10
                                          ROBBINS GELLER RUDMAN
11                                            & DOWD LLP
                                          655 West Broadway, Suite 1900
12                                         San Diego, CA  92101-3301
                                          Telephone:  619/231-1058
13                                         619/231-7423 (fax)

14                                         E-mail: torg@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES
LAWS (2:13-cv-02039-RSM)

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101
Telephone: 619/231-1058 • Fax: 619/231-7423

# Mailing Information for a Case 2:13-cv-02039-RSM Fialkov v. Microsoft Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Matthew I Alpert**
  malpert@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Paul J Collins**
  pcollins@gibsondunn.com,nstern@gibsondunn.com,kbarry@gibsondunn.com

- **Shane P. Cramer**
  shanec@calfoharrigan.com,susiec@calfoharrigan.com,florinef@calfoharrigan.com

- **Francis A DiGiacco**
  fdigiacco@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jonathan C Dickey**
  jdickey@gibsondunn.com

- **Tor Gronborg**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com,lmix@rgrdlaw.com

- **Arthur W. Harrigan , Jr**
  arthurh@calfoharrigan.com,vickyc@calfoharrigan.com

- **Douglas C McDermott**
  doug@mcdermottnewman.com,eric@mcdermottnewman.com

- **David A Rosenfeld**
  Drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Noah F Stern**
  NStern@gibsondunn.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`